JOHN CRISANTI *v.* THE CREMO BREWING COMPANY

BROWN, JENNINGS, DICKENSON, BALDWIN AND INGLIS, Js.

Argued February 8—decided March 7, 1950.

*Alfonse C. Fasano,* for the appellant (plaintiff).

*DeLancey Pelgrift,* for the appellee (defendant).

INGLIS, J. In this action, sounding in negligence, the trial court found that negligence of the defendant was the proximate cause of the plaintiff's injuries but denied recovery because it concluded that the relationship of principal employer and employee under the Workmen's Compensation Act existed between the defendant and the plaintiff. Whether that conclusion was justified is the question raised by this appeal.

The plaintiff was an employee of Federal Motor Lines, a corporation engaged in the general transportation business for hire. The defendant at its plant in New Britain manufactured a malt beverage known as "Malt Dukesa" which it put up and sold in glass bottles packed in cases. It had a contract with the Federal Motor Lines whereby the latter was engaged to transport cases of the beverage to New York to a distribution center for distribution throughout the country or to a dock for shipment overseas. The defendant maintained its own fleet of fifteen trucks which handled 80 per cent of its entire deliveries and carried shipments throughout Connecticut and Massachusetts.

On the day in question a trailer truck of the Federal Motor Lines was backed up to a loading platform at the defendant's plant to take on a load for transportation pursuant to contract. The plaintiff was one of the Federal Motor Lines' employees working on the truck. In the process of loading, an electrically oper-

ated conveyor brought the cases from inside the building to the loading platform, and the defendant's employees then pushed them by hand over an extension of the conveyor into the trailer, where employees of the Federal Motor Lines took them from the conveyor and piled them in order. It was while the plaintiff was engaged in this latter operation that he was injured by reason of the explosion of some of the bottles.

From the subordinate facts found, the trial court concluded as a matter of fact that the loading of the trailer with cases of the defendant's product was the kind of work that could ordinarily or appropriately be performed by its employees. The plaintiff has attacked this finding, but, as is set forth below, it is justified in reason and must stand. *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 362, 122 A. 63.

It is, of course, well settled that where there exists the relationship of employer and employee within the Workmen's Compensation Act the employee may recover for injuries sustained in the course of his employment only as provided by the act. The employer has no common-law liability to his employee. *Farrell* v. *L. G. DeFelice & Son, Inc.*, 132 Conn. 81, 89, 42 A. 2d 697; *Buytkus* v. *Second National Bank*, 127 Conn. 316, 319, 16 A. 2d 579; *Bogoratt* v. *Pratt & Whitney Aircraft Co.*, 114 Conn. 126, 130, 157 A. 860; *Hoard* v. *Sears Roebuck & Co.*, 122 Conn. 185, 188, 188 A. 269. The section of the act which bears upon the question whether the plaintiff here was the employee of the defendant is General Statutes, § 7423. This section provides, in effect, that when any principal employer shall procure any work to be done for him by a contractor he shall be liable to pay workmen's compensation to the employees of that contractor provided two conditions are met. These conditions are (1) that the work so procured to be done shall be a part or process in the

trade or business of such principal employer, and (2) that the work shall be performed in, on or about premises under the control of the principal employer. In the present case the trial court concluded that both of these conditions had been met.

The first of these conditions, that is, that the work contracted for by the claimed principal employer shall be a part or process in his trade or business, has been discussed in a number of Connecticut cases. *Greenwald* v. *Wire Rope Corporation of America,* 131 Conn. 465, 466, 40 A. 2d 748; *Zimmerman* v. *MacDermid, Inc.,* 130 Conn. 385, 388, 34 A. 2d 698; *King* v. *Palmer,* 129 Conn. 636, 640, 30 A. 2d 549; *Bown* v. *Waterbury Battery Co.,* 129 Conn. 44, 46, 26 A. 2d 467; *Hoard* v. *Sears Roebuck & Co.,* supra, 189; *Massolini* v. *Driscoll,* 114 Conn. 546, 552, 159 A. 480; *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* supra, 136; *Fox* v. *Fafnir Bearing Co.,* 107 Conn. 189, 191, 139 A. 778; *Palumbo* v. *Fuller Co.,* supra, 364. These cases make it clear that no one exclusive test can be set up and that each case must be determined on its own facts, but that the words "part or process in the trade or business" include all those operations which enter directly into the successful performance of the commercial function of the principal employer. If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of his business, it is a part or process in his business.

In the case before us the work in which the plaintiff was engaged at the time he was injured was in connection with the transportation of the defendant's product. It was a step in the delivery of that product to the defendant's customers. It clearly was a part of the commercial function of the defendant not only to manufacture the malt beverage but also to market and

deliver it. That delivery of the product was an operation which was a process in the business of the defendant is emphasized by the fact that it maintained a fleet of trucks operated by its own employees to deliver to its customers 80 per cent of its merchandise. It can make no logical difference that the deliveries made by the defendant's own trucks were direct to its customers in Connecticut and Massachusetts, whereas the delivery upon which the plaintiff was engaged was to be to a distribution center in New York. In both kinds of delivery the goods were on their way to purchasers, and it was just as much a business function of the defendant to deliver its product by one method as by the other. Moreover, the particular operation in which the plaintiff was engaged at the time he was injured was the loading of the truck. Not only was this operation one which might appropriately be performed by the defendant's direct employees but also it was a task which at the time was actually being performed by them in collaboration with the plaintiff.

This case is distinguishable on its facts from *Greenwald* v. *Wire Rope Corporation of America,* supra. In that case the defendant, a manufacturer, made no practice of transporting its freight outside of New Haven, and the purpose which took the plaintiff onto the defendant's premises was to pick up freight for his immediate employer, who was engaged in the general business of transporting freight to points outside the city. That is, the plaintiff there was performing an operation which the regular employees of the defendant did not ordinarily perform, and it was in connection with a function which the defendant did not recognize as a part of its business. The present case is more nearly akin on its facts to *Zimmerman* v. *MacDermid, Inc.,* supra, 387, where the plaintiff was injured in connection with transportation of chemicals to

the principal employer's plant, to *Hoard* v. *Sears Roebuck & Co.*, supra, 189, where the plaintiff was engaged in removing rubbish from the principal employer's yard, and to *Palumbo* v. *Fuller Co.*, supra, 359, where the plaintiff was injured in connection with the removal of loam from the site of a building which the principal employer had contracted to build. In each of those cases it was held that the work in which the plaintiff was engaged was a part or process in the trade or business of the principal employer. Cases in other jurisdictions, under similar statutes, involving the question whether the making of deliveries of a principal employer's goods is a part or process of his business tend to confirm our conclusion. *Industrial Commission* v. *Continental Investment Co.*, 78 Colo. 399, 401, 242 P. 49; *In re Fisk*, 40 Idaho 304, 306, 232 P. 569; note, 150 A. L. R. 1214, 1242.

In the present case the trial court was justified in concluding upon the subordinate facts that the loading of the trailer with cases of the defendant's product for delivery to a distribution center in New York was the kind of work that could ordinarily or appropriately be performed by employees of the defendant. The court's conclusion of law that the work in which the plaintiff was engaged was a part or process in the defendant's trade or business followed necessarily.

The second condition, that the work "be performed in, on or about premises under his [the principal employer's] control," has been a controlling factor in the decision of four cases in this state. *Bates* v. *Connecticut Power Co.*, 130 Conn. 256, 259, 33 A. 2d 342; *Downing* v. *Stamford Community Chest*, 125 Conn. 728, 729, 4 A. 2d 329; *Wilson* v. *Largay Brewing Co.*, 125 Conn. 109, 111, 3 A. 2d 668; *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 364, 122 A. 63. In *Wilson* v. *Largay Brewing Co.*, supra, we discussed the rationale of this

requirement of the statute. We quoted (p. 111) from *Back* v. *Dick Kerr & Co.,* [1906] A. C. 325, 333, the English statute being similar to our own, as follows: ". . . it is necessary in order to satisfy the words of s. 7, to hold that the employment in which the workman must be engaged in order to entitle him to recover must be carried on in some defined or ascertainable physical area and that at the time of the accident he must have been working 'on or in or about' that area. . . ." We then went on to say: "Most compensable injuries are due to conditions of employment the danger from which could be prevented or minimized by sufficient oversight or control. The underlying purpose of the restriction as to the place of employment in the various acts was obviously to limit liability to those situations where such conditions might be assumed to be largely within the control or observation of the principal employer." To that we now add that the fundamental and principal intent of the legislature in using the phrase in question was to limit the principal employer's responsibility for accidents to such accidents as occurred within a definite, specified area. The use of the phrase "under his control" is merely descriptive of that area. It is used instead of such words as "owned by him" or "in his possession" in order to describe the area in a more inclusive fashion. The emphasis is upon limitation of the area within which the accident must happen rather than upon actual control of the implements which caused the accident.

Stressing the last part of the quotation from the *Wilson* case, supra, the plaintiff here contends that when this accident happened his work was within the truck of the Federal Motor Lines, that the defendant had no control over that truck and that, therefore, it must be concluded that the work in which he was engaged was not on premises under the control of the

defendant. The fallacy of that contention lies in the fact that a truck is not real estate and, therefore, not "premises." *Doherty's Case,* 294 Mass. 363, 366, 2 N. E. 2d 186, 105 A. L. R. 576. The premises upon which the plaintiff was when he was injured were the land under the control of the defendant. The trial court's conclusion to that effect was correct.

It follows that, under the terms of General Statutes, § 7423, the defendant was the principal employer of the plaintiff and therefore the plaintiff had no cause of action against it except under the Workmen's Compensation Act.

There is no error.

In this opinion the other judges concurred.